# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

| | | |
|---|---|---|
| **Dana Albrecht,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| **v.** | ) | **Civil No. 24-1217** |
| | ) | |
| **Kathleen Sternenberg, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## PLAINTIFF'S RESPONSE TO SHOW CAUSE ORDER

---

NOW COMES Plaintiff Dana Albrecht, *pro se*, and respectfully provides this response to this Court's *Order* to show cause entered April 19, 2024. Plaintiff further states:

1. The Clerk's show cause *Order* (April 19, 2024) cites four cases to suggest that this appeal should be dismissed for lack of jurisdiction:

   (a) *Branson v. City of Los Angeles*, 912 F.2d 334 (9th Cir. 1990), discussing an interlocutory appeal in *Ronald Branson v. City of Los Angeles, et al*, 2:98-cv-00778, (C.D. Cal.).

   (b) *Franzen v. Federal Land Bank*, 897 F.2d 973 (8th Cir. 1990), discussing an interlocutory appeal from the United States District Court for the District of Nebraska (Warren K. Urbom, J).

   (c) *Theis v. Smith*, 827 F.2d 260 (7th Cir. 1987), discussing an interlocutory appeal taken in *Richard J. Theis and Terre Theis v. Warren Smtih, et al*, 1:86-cv-06994, (N.D. Ill).

(d) *Thompson v. Betts*, 754 F.2d 1243 (5th Cir. 1985), discussing an interlocutory appeal from the United States District Court for the District of Texas (Warren Robert Madden Hill, J.).

*As directed by this Court, Plaintiff further responds as follows:*

**This case is distinguishable from at least three of the four cases cited by the Clerk**

2.  Unlike in *Branson*, Plaintiff argues that this case falls under the "Gillespie doctrine." *Branson* at 336, citing *Gillespie v. United States Steel Corp.*, 379 U.S. 148 (1964).

3.  In *Franzen*, those plaintiffs sought damages, and here Plaintiff seeks only declaratory relief. Further, nothing concerning the "Gillespie doctrine" was plead.

4.  In *Thompson*, that plaintiff also sought damages, and here Plaintiff seeks only declaratory relief. Further, nothing concerning the "Gillespie doctrine" was plead.

**The district court dismissal order falls within the collateral order doctrine.**

5.  As set forth more fully below, the dismissal order falls within the collateral order doctrine. *Branson* at 335.

6.  The federal district court based its dismissal order on Ms. Sternenberg's claim to quasi-judicial immunity as a *Guardian ad Litem* of the family division of the New Hampshire circuit court, basing its decision on *Cok v. Cosentino*, 876 F.2d 1 (1st Cir. 1989) and *Cok's* various progeny; e.g, *Nystedt v. Nigro*, 700 F.3d 25 (1st Cir. 2012).

7.  Plaintiff respectfully suggests that this Court erred in deciding *Cok*, and should overturn (or at least clarify) its prior decision in *Cok*. In so doing, this Court should conduct a *stare decisis* analysis and take into consideration (1) the nature of any alleged error; (2) the quality of the prior reasoning; (3) workability; (4) effect on other areas of law, and (5) reliance interests. *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228, 2237-39 (2022).

8.  As this Court previously explained (*Cok* at 3):

> The functional approach taken in immunity cases, which requires an analysis of the nature of the duties performed, and whether they are "closely associated with the judicial process," *Cleavinger*, 474 U.S. at 200, 106 S.Ct. at 500, support the conclusion that the guardian ad litem and conservator here were involved in the adjudicative process and shared in the family court judge's absolute immunity.

9.  Plaintiff respectfully disagrees that *Cok's* reasoning in its entirety can be correctly applied to the present instant case, and further respectfully suggests that it should not be.

10. In stark contrast to *Cok's* reasoning, Plaintiff stated (at ¶2), in his *Objection* (Doc 36) filed in the federal district court to the *Magistrate's Report and Recommendation* (Doc 23) that:

> Ms. Sternenberg is not entitled to quasi-judicial immunity, as this defense is inapplicable in an official-capacity lawsuit. Furthermore, Ms. Sternenberg, as a private practice attorney, doesn't qualify as a "public official" entitled to quasi-judicial immunity, which is reserved for public employees performing judge-like functions. A New Hampshire Guardian Ad Litem's (GAL) recommendations are advisory and not binding, as stated in *Richelson v. Richelson*, 130 N.H. 137 (1987). This is not a judge-like function. Rather, such a role aligns more closely with an expert witness. Further, Plaintiff had a private contractual relationship with Ms. Sternenberg, who illegally overbilled, an administrative act, which further undermines her claim to quasi-judicial immunity. Cases from New Jersey and Vermont, like *Levine v. Wiss & Co.*, 478 A.2d 397 (N.J. 1984) and *Politi v. Tyler*, 751 A.2d 788 (Vt. 2000), indicate court-appointed experts can be held liable for negligence.

Plaintiff developed this argument further in ¶¶3-4 of his *Objection* (Doc 36) and at §§II-IV of his *Argument* at pages 32-37 in his accompanying *Memorandum of Law* (Doc 36-1).

11. Moreover, the functional approach taken in immunity cases has also subsequently been very recently further developed by this Court's sister circuits. *See, e.g.* *Gibson v. Goldston*, 85 F.4th 218 (4th Cir. 2023).

12. Even if this Court does not agree with Plaintiff's argument(s) on the merits, and even if Plaintiff is wrong, that would not divest this Court of jurisdiction substantively to decide the issue (s) Plaintiff raises on appeal at this time.

13. Further. Ms. Sternenberg is not an employee of the State of New Hampshire, nor an employee of any agency of the State of New Hampshire. Indeed, as a private attorney, she has even had to retain private defense counsel in this action. Her defense is not being paid for by the State. By way of contrast, all other defendants in this action are either current or former employees of the State of New Hampshire or its agencies, their counsel in this matter are all employees of the State of New Hampshire or its agencies, and the State is funding their defense. Cf. *Carrigan v. N.H. Dep't of Health & Human Servs. & A.*, 174 N.H. 362 (2021) (articulating recently revised standing requirements in 2018 that would apply for any New Hampshire taxpayer to bring suit against the State in its state courts concerning spending of public funds by the State, but would not apply to any private funds earned by, or spent on behalf of, Ms. Stenernberg).

14. As of 2018, the *Carrigan* opinion alone has vastly widened the gulf between the function of a *Guardian ad Litem* who is paid contractually and privately by the parties, and the function of a judge, who is paid by the State, further undermining *Cok's* reasoning.

15. Even if this Court ultimately does not agree with Plaintiff and decides to leave *Cok* entirely intact, there should be no question that this Court has jurisdiction, at *some* stage in these proceedings, either (A) fully to affirm its prior decision in *Cok*, or (B) to overturn or otherwise clarify its prior decision in *Cok*.

16. Because at least one issue raised (i.e. whether *Cok's* reasoning remains entirely correct at the present time) is purely collateral in nature, this, at least, is now ripe for appellate review.

17. Plaintiff respectfully suggests this Court need not even decide at this time whether Ms. Sternenberg should ultimately enjoy any form of immunity, or what kind.

18. Plaintiff respectfully requests, however, for this Court to perform further *analysis of the duties* Ms. Sternenberg has performed, *or failed to perform*, so as further to clarify *what role she played*, and continues to play, in the New Hampshire court system. This is fully consistent with the functional analysis approach.

19. Consequently, Plaintifff respectfully invites this Court further to review or further to clarify *the precise nature* of Ms. Sternberg's *function* or *role* using the functional approach taken in immunity cases, especially in light of more recent decisions (like *Gibson*) in sister circuits,, or other prior state court opinions such as *Politi v. Tyler* that were decided subsequently to *Cok*.

20. "Issuing an order is a judicial function; carrying that order out is an executive one." *Gibson* at 224. Notably, *Gibson* makes "much ado" under the functional approach that a "judicial function" requires the ability to issue an *order*, rather than a *recommendation*. Arguably, under *Gibson's* reasoning, even New Hampshire Marital Masters, who have substantially more authority than a New Hampshire *Guardian ad Litem*, might not perform "judicial functions" because they are incapable of issuing *orders*.

21. By way of contrast, "[Marital] Masters have no inherent power, but rather derive all their power from the appointing judge or from the agreement of the parties." *Witte v. Justices of New Hampshire Superior Court*, 831 F.2d 362, 363 (1st Cir. 1987). "Thus, under the marital master system, it is a judge, not a master, which determines the case." *Witte* at 363.

22. Notably, *Gibson* also makes "much ado" under the functional approach that a "judicial function" typically does *not* involve home visits, that also was precisely a major component of the functions carried out by Ms. Sternenberg.

23. Notably, the money charged by Ms. Sternenberg to Plaintiff at the behest of the *orders* of her close friend Judge Introcaso for, *inter alia*, such home visits, *also* would be an *executive* act, not a judicial one. *Gibson* at 224.

24. Plaintiff also alleges Ms. Sternenberg engaged in multiple non-judicial acts taken in the complete absence of all jurisdiction (such as her several clandestine vacations to Niagra on the Lake together with her close friend, former Judge Introcaso). This would defeat any claim to immunity raised

even by any duly appointed actual judge of the state court, in addition to anyone allegedly appointed to undertake so-called "judge like" functions. At minimum, the federal district court should have evaluated these allegations on their merits, prior to dismissal of the action against Ms. Sternenberg, which it did not do.

25. Further, *Cok* makes no exception whatsoever with regard to actions seeking a purely declaratory judgment, such as in this instant case. Nor, it appears, does its progeny such as *Nystedt*.

26. "Congress plainly intended declaratory relief to act as an alternative to the strong medicine of the injunction." *Winter v. Natural Resources Defense Council, Inc.*, 555 US 7, 33 (2008), citing *Steffel v. Thompson*, 415 U.S. 452 (1974). However, *Cok* and its progeny make no such allowances. To be consistent with the opinion of this Court's sister circuit in *Bolin v. Story*, 225 F.3d 1234 (11th Cir. 2000), this Court should now also provide similar allowances for purely declaratory judgments.

27. Plaintiff has also raised this issue at ¶¶8-9 of his *Objection* (Doc 36) and at §§VIII-IX of his *Argument* at pages 41-45 in his accompanying *Memorandum of Law* (Doc 36-1).

28. In summary, whether, or under what circumstances, *Cok's* reasoning (and its progeny) remains correct (or applicable) at the present time, or in the present case, is "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Branson* at 335.

**Under the "Gillespie doctrine," delay would cause irreparable harm to Plaintiff.**

29. As set forth more fully below, the federal district court dismissal order also falls within the parameters for unfairly prejudicial delay articulated by the United States Supreme Court in *Gillespie v. United States Steel Corp.*, 379 U.S. 148 (1964).

30. By seeking a *purely declaratory judgment* in the federal district court, Plaintiff sought to clarify the various roles and relationships of the parties

under federal due process guidelines <u>moving forward</u>. Cf. *Rooker-Feldman* doctrine. Cf. *[Mitchum v. Foster, 407 U.S. 225 (1972)](#)*.

31. Related state proceedings in Plaintiff's family law case <u>remaining ongoing</u>, including an *ongoing appeal* to the New Hanpshire Supreme Court of a state civil domestic violence order recently extended by the state court because plaintiff's ex-wife alleged she was in fear for her safety because of the content of pleadings filed by Plaintiff.

32. More precisely, Plaintiff's ex-wife alleged she was in fear for her safety specifically *because of* a pleading previously filed by Plaintiff in the NH Supreme Court ([Doc 36-16](#)) containing a transcript of Ms. Sternenberg's prior testimony.[1]

33. Consequently, Plaintiff is now "in a bind" as the NH Supreme Court has clearly (and very recently) expressed its desire for a related state court appeal to proceed without further delay, when Plaintiff <u>first</u> sought to clarify (by seeking a declaratory judgment) the rights and responsibilities of the parties under federal due process <u>moving forward from August 2023</u>. Consequently, and more specifically, Plaintiff also argues the federal district court also erred in deciding that purely declaratory relief was unavailable.

34. Plaintiff's *Motion to Supplement the Record and to Lodge Documents in Katherine Albrecht v. Dana Albrecht, No. 659-2019-DV-00341*, filed concurrently with this response, is incorporated by reference herein, the same as if plead in full.

35. In these more recent state court proceedings which took place <u>after</u> the filing of the federal district court case, Ms. Sternenberg *subsequently refused to appear in state court* to provide relevant testimony about whether Plaintiff's ex-wife's present alleged fear for her safety arising out of Ms. Sterneberg's prior testimony was reasonable. Thus, in the alternative, Ms. Sternenberg is (at the *present* time) *now refusing* to perform her previously "delegated functions." This further underscores the need to clarify, *at this time*, and

---

1   Cf. *[United States v. Rahimi, 61 F.4th 443, 465-66 (5th Cir. 2023)](#)* (describing other various farcical circumstances under which civil domestic violence restraining orders are regularly granted, such as when a judge issued a restraining order against television celebrity personality David Letterman on the grounds that his mere presence on television harassed the plaintiff)

using the functional approach, the precise nature of **(A)** the duties previously performed by Ms. Sternenberg; and **(B)** the nature of what duties, if any, Ms. Sternenberg is presently required to perform. *Cok* at 3.

36. Moreover, in this instant case, additional "exceptional circumstances" exist as well. Plaintiff's *Motion to Supplement the Record and to Lodge Notice of New Hampshire House Bill 1104* (hereto "HB1104-FN"), filed concurrently with this response, is incorporated by reference herein, the same as if plead in full.

37. If this bill, recently just passed on May 2, 2024 by both houses of the NH State Legislature, is signed into law by New Hampshire Governor Christopher Sununu, then the new state statute would almost certainly partially abrogate *Cok* by legislative fiat, at least in the State of New Hampshire. HB1104-FN articulates a "bright line" *per se* rule that makes a crystal clear distinction between judges (subject to misconduct findings by the NH judicial conduct committee) and those *not* subject to misconduct findings by the NH judicial conduct committee, such as NH *Guardian ad Litems*.

38. It also appears to plaintiff that the federal district court is now taking an unduly long time to issue any further recommendations by the Magistrate judge, given that *all other other defendants also asserted a very similar absolute judicial immunity defense*, implying either **(A)** that Plaintiff will be unfairly prejudiced by the Magistrate Judge taking an unduly long time to issue recommendations on *all* claims to judicial immunity, thereby unnecessarily delaying *timely* non-interlocutory review by this Court, or **(B)** there is, indeed, *something very different* about Ms. Sternenberg's claim to quasi-judicial immunity, thereby strengthening Plaintiff's argument that the dismissal order falls squarely within the collateral order doctrine. *Branson* at 335.

39. Finally, and most consistent with the "Gillespie doctrine," the related state court proceedings also involve parental rights and responsibilities. Consequently, while the various state and federal proceedings continue to drag on, Plaintiff's children continue to grow older. If appellate review is delayed, the state court proceedings may now reach the point where

Plaintiff's youngest daughter may now "age out" before any of the future roles and relationships between the parties under federal due process that plaintiff sought to clarify (starting in August 2013) by way of a federal declaratory judgment are ever adjudicated in the various, and ongoing state and federal proceedings.

## Conclusion

40. For the foregoing reasons, Plaintiff has shown cause why this appeal should not be dismissed.

WHEREFORE Plaintiff Dana Albrecht respectfully requests that this Court:

A) Not to dismiss the present interlocutory appeal; and,

B) For all other such relief as is just and equitable.

Respectfully submitted,

_____
DANA ALBRECHT
*Plaintiff Pro Se*
131 Daniel Webster Hwy #235
Nashua, NH 03060
(603) 809-1097
dana.albrecht@hushmail.com

June 3, 2024.

**CERTIFICATE OF SERVICE**

I, Dana Albrecht, hereby certify that a copy of this *Response* shall be served to all the parties and/or counsel of record through the ECF system.

_____
DANA ALBRECHT

June 3, 2024