1                        STATE OF NEW HAMPSHIRE

2           9TH CIRCUIT COURT - FAMILY DIVISION - NASHUA

3

KATHERINE ALBRECHT,          ) Family Division Case No.

4                       ) 659-2019-DV-00341

             Plaintiff,      )

5                       ) Nashua, New Hampshire

          vs.           ) November 15, 2023

6                       ) 2:32 p.m.

DANA ALBRECHT,              )

7                       )

            Defendant.      )

8  _____ )

9

                       MOTION HEARING

10          BEFORE THE HONORABLE KEVIN RAUSEO

       JUDGE OF THE CIRCUIT COURT - FAMILY DIVISION

11                  **AMENDED (ERRATA)**

12  <u>APPEARANCES:</u>

13  For the Plaintiff:        Michael Fontaine, Esq.

                         WELTS WHITE FONTAINE PC

14                       PO Box 507

                         Nashua, NH 03061

15

  Pro Se Defendant:         Dana Albrecht

16                       (Address Unknown)

17  Also Present:             Catherine Denny, Esq.

                         For Judge David King

18                       Linda Smith, Esq.

                         For Kathleen Sternenberg

19                       Philip Waystack, Jr., Esq.

                         Pro Se

20

  Audio Operator:           Electronically Recorded

21                       **Not Monitored**

22  TRANSCRIPTION COMPANY:      eScribers, LLC

                         7227 N. 16th Street, Suite 207

23                       Phoenix, AZ 85020

                         (800) 257-0885

24                       www.escribers.net

25  Proceedings recorded by electronic sound recording; transcript



1    produced by court-approved transcription service.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1          (Proceedings commence at 2:32 p.m.)

2          THE COURT:  Are we on the record?

3          THE CLERK:  This is the Nashua Family Court.  Can I

4    ask who just joined the call, please?

5          THE PETITIONER:  This is Katherine (indiscernible)

6    Albrecht.

7          THE CLERK:  All right.  Thank you.

8          THE COURT:  All right.  Good afternoon, everyone.

9    This is Judge Rauseo with the 9th Circuit Family Court.  This

10   is in the matter of Katherine Albrecht v. Dana Albrecht, Case

11   Number 659-2019-DV-341.  I'm going to take attendance.  I'm

12   going to start -- I'm going to call people's names.  So I

13   heard Ms. Albrecht on the line.  Is Attorney Fontaine on the

14   line?

15         MR. FONTAINE:  Yes, Your Honor.

16         THE COURT:  Okay.  Is Mr. Dana Albrecht on the line?

17         MR. ALBRECHT:  Yes, Your Honor.  And I'm having a

18   little trouble hearing you (indiscernible).

19         THE COURT:  Okay.  I'll move a little closer to the

20   phone.  Okay?  Can you hear better now, sir?

21         MR. ALBRECHT:  Yes.

22         THE COURT:  All right.  Is Attorney Denny on the

23   line?

24         MS. DENNY:  Yes, I'm on the line.  This is Catherine

25   Denny.  I think there just is a little bit of an echo behind



1  you when you're talking.

2          THE CLERK:  Someone has it on speakerphone.

3          THE COURT:  Yeah, I think someone has it on speaker.

4  So if someone has it on speaker, please take it off speaker.

5  Oh, someone just joined.  Okay.  So Attorney Denny's on the

6  line.  Is Judge King on the line?

7          MS. DENNY:  He will not be appearing.

8          THE COURT:  Okay.  Is Attorney Creegan on the line?

9          MS. DENNY:  She will not be present either.

10         THE COURT:  Okay.  Is.  Attorney Sternenberg on the

11 line?

12         MS. SMITH:  She is not, Your Honor.  Linda Smith on

13 her behalf.  She will not be appearing.

14         THE COURT:  Okay.  And Attorney Smith, you are the

15 counsel of record for Attorney Sternenberg?

16         MS. SMITH:  I am.

17         THE COURT:  Okay.  Is Attorney Waystack on the line?

18 Attorney Waystack?  Who just joined?  Is that Attorney

19 Waystack?  Okay.

20         MS. SMITH:  Sorry.  He was on the line.

21         THE COURT:  Excuse me?

22         MS. SMITH:  He was on the line with the clerk.

23         MR. FONTAINE:  I heard him on the line.

24         MS. SMITH:  Yeah.

25         THE COURT:  Okay.  We'll wait another second, see if



1    he joins again.  Okay?

2          MR. WAYSTACK:  So this is Phil Waystack, back on

3    behalf of myself.  I listened to you, Judge, and I took it off

4    speaker and promptly disconnected the line.

5          THE COURT:  Okay.

6          MR. WAYSTACK:  Sorry to be so clumsy.

7          THE COURT:  No, no.  Attorney Waystack's on the

8    line.  Is there anyone else on the line who has not identified

9    him or herself?  All right.  So we'll proceed.

10          So I scheduled this hearing.  Let me ask Mr.

11    Albrecht as well as Attorney Fontaine.  I got a decision from

12    the New Hampshire Supreme Court today, right around 1:30ish.

13    Did both of you get that Supreme Court order?  Start first

14    with Mr. Albrecht.  Start with Mr. Albrecht first.

15          MR. ALBRECHT:  Mr. Albrecht.  You would like me to

16    proceed, Your Honor?

17          THE COURT:  Yeah.  So Mr. Albright, did you get a

18    copy of the Supreme Court decision that was issued today?

19          MR. ALBRECHT:  Yes.

20          THE COURT:  Okay.  Attorney Fontaine, did you get a

21    copy of the Supreme Court decision that was issued today?

22          MR. FONTAINE:  Yes.

23          THE COURT:  Okay.  So I've scheduled this because

24    tomorrow is scheduled for a 30 minute offer of proof hearing.

25    We got -- I received three motions to quash yesterday, or I

1   think maybe one may have been Monday.  I received one today

2   from Attorney Waystack and so I asked to address this.  I also

3   got yesterday, after around 2:30 it was time stamped, I don't

4   think I saw it until after that, witness list for Mr. Albrecht

5   for 11 witnesses.

6         So what I'm going to do is I'm going to address the

7   motions to quash first.  Once I issue a ruling on the motion

8   to quash for the particular individual and the attorneys, you

9   may stay on the line, or you may disconnect whatever you

10   choose to do.  And then I'll address the witness list as well,

11   because like I said, we have a 30 minute offer of proof

12   hearing tomorrow, and I'm not going to have time to address

13   these issues in the time allotted, so.

14         I've reviewed the four motions -- I reviewed the

15   four motions to quash.  I also reviewed Mr. Albrecht's four

16   objections.  So I don't need people to restate, unless you

17   want to, the arguments, but I've read them.  I've also

18   reviewed the Supreme Court's decision from July 14th, 2023,

19   which the mandate issued on August 16th, 2023.  I reviewed

20   again the October 20th, 2023, Supreme Court order and the one

21   that was issued about an hour ago, November 15th, 2023.

22         So I'm going to first start with the motion to quash

23   because it's the one I received first.

24         MR. ALBRECHT:  Your Honor?

25         THE COURT:  Yes?


www.escribers.net | 800-257-0885

```
 1            MR. ALBRECHT:  (Indiscernible)

 2            THE COURT:  Go ahead, Mr. Albrecht.

 3            MR. ALBRECHT:  I (indiscernible) there is a fifth
```
 4   motion to quash that's still outstanding.  It would be Ms.

 5   Albrecht's ex-parte motion to quash, Number 187 from March

 6   28th, 2023.  It was ordered to be scheduled for a prompt

 7   hearing within five days.  It was previously scheduled for

 8   March 30, '23.  On that same day, I asked for it to be

 9   rescheduled and we're now seven and a half months later so

10   that fifth motion to quash is still outstanding.

11            And just for the record, there's a motion to strike

12   Number 192 that's also still outstanding.

13            THE COURT:  So right now we're addressing --

14            MR. ALBRECHT:  (Indiscernible).

15            THE COURT:  -- we're addressing the witness list,

16   and the motions are last.  I'll take a look at 192 --

17            MR. ALBRECHT:  Okay.

18            THE COURT:  -- as well.

19            MR. ALBRECHT:  And I would respectfully ask that we

20   address my motion in limine prior to the motions to quash.

21            THE COURT:  The motion in limine to not take

22   judicial notice of the federal court proceeding?

23            MR. ALBRECHT:  Well, so they've got a lot of that

24   stuff in their motions to quash.  So I would question the

25   standing of attorneys from the executive branch even to be

1  here.  This is supposed to be a civil DV proceeding between

2  two private parties.  I don't believe Your Honor would have

3  jurisdiction to do the State's bidding in this proceeding to

4  affect the outcome and any separate federal civil rights

5  matter pending federal court.  And my view would be that would

6  be a violation of Article 77 separation of powers.

7          THE COURT:  Okay.

8          MR. ALBRECHT:  So in light of that, I would

9  respectfully request you do the motion in limine first and

10 then we can proceed from there.

11         THE COURT:  Okay.  So I do find Attorney Denny has

12 standing to represent Judge King and Attorney Creegan.  And so

13 the request to find that they don't have standing is denied.

14 As for the motion in limine, I'm not taking judicial notice of

15 a court proceeding that I don't have the file for.  This is

16 not my file.  However, to the extent they're commenting on

17 litigation that exists, you know, it doesn't have much --

18         MR. ALBRECHT:  Well, I would object to that.

19         THE COURT:  -- it doesn't have --

20         MR. ALBRECHT:  I would basically object to that

21 (indiscernible) request to be stricken.

22         THE COURT:  Okay.  What's the basis for your reason

23 to object to them mentioning that there was a lawsuit filed in

24 the federal district court?

25         MR. ALBRECHT:  Because I think they're trying to use



1　this proceeding to effect that outcome --

2　　　　　THE COURT:  Okay.

3　　　　　MR. ALBRECHT:  -- and that that's completely

4　inappropriate.

5　　　　　THE COURT:  All right.  And I would agree with that,

6　Mr. Albrecht.  I'm not considering the lawsuit as a basis to

7　deny the motion to quash.  What I am doing, Mr. Albrecht, and

8　why I scheduled this hearing today, is tomorrow's hearing is

9　of limited scope.  The Supreme Court was very clear in its

10　order from July 14th, 2023, when it said the December 2019

11　order is final, underlining final, and that their decision

12　affirming it is final and they, once again, they underlined

13　final.

14　　　　　And so this is a limited scope hearing as the

15　Supreme Court found in, once again, July 14th, 2023.  The

16　issue that's before this Court tomorrow is whether there's

17　good cause to be shown.  To determine, the trial court must

18　assess whether the current conditions are such that there is

19　still concern for the safety and well-being of the Plaintiff.

20　That's from part of the order from the Supreme Court.  So

21　that's the standard we're going by tomorrow, and that's the

22　standard on determining whether the motions of quash should be

23　granted.

24　　　　　So I'm going to address now the motion to quash from

25　Attorney Sternenberg.  I've read the objection.  I've read the

1  motion.  I'm going to give you, Mr. Albrecht, an opportunity

2  to, if you want to add anything in addition to what you wrote

3  in your objection.

4       MR. ALBRECHT:  Well, as you know, Your Honor, I only

5  received notice of this hearing at 3:30 last night, and I was

6  madly drafting pleadings.  So I don't see the issue of a

7  guardian ad litem who has direct knowledge of key issues in

8  this case, you know, such as Ms. Albrecht's fighting

9  allegations.  Key issues concerning the factual record of

10 Collinsville Bible Church.  And this whole DV is about

11 parenting time to begin with.  And I think a guardian is

12 pretty relevant to that.

13      And I'd certainly like to get Ms. Sternenberg's

14 testimony on why Ms. Albrecht would fear for her safety if she

15 was in Michigan, and I go within 2000 feet of Collinsville

16 Bible Church at any time.  I think she's had extensive

17 involvement with both of us in the past as well as the

18 children.  And (indiscernible) again, my position, this is all

19 about the children.

20      THE COURT:  Okay.  You done, Mr. Albrecht?

21      MR. ALBRECHT:  I believe so.

22      THE COURT:  Okay.

23      MR. ALBRECHT:  I'm sure I'll think of something else

24 later.

25      THE COURT:  Attorney Fontaine, you haven't filed any



1 objections yet and so I'm going to give you an opportunity to

2 comment on the motion to quash Attorney Sternenberg's

3 subpoena.

4 MR. FONTAINE: I agree with the arguments raised by

5 her attorney that I don't believe that Attorney Sternenberg

6 could provide any relevant information to the issue that you

7 will be deciding tomorrow. And therefore, I don't think that

8 she should be required to testify.

9 THE COURT: Okay.

10 MR. ALBRECHT: Rebuttal, Your Honor.

11 THE COURT: Sure, Mr. Albrecht. Go ahead.

12 MR. ALBRECHT: Ms. Albrecht specifically raised the

13 issue of Sternenberg as GAL in her most recent DV pleading.

14 She's repeatedly asked for her re-appointment, and she has

15 made her allegations presently (indiscernible) against all

16 evidence and testimony in the divorce case that -- that would

17 involve Ms. Sternenberg, so --

18 THE COURT: What specifically --

19 MR. ALBRECHT: -- I mean, unless she's willing to

20 narrow down her allegations, which is basically -- I believe

21 you've already pre-decided you accept the order. So I'm not

22 sure what effect tomorrow would have but given we're having a

23 hearing and we're supposed to address everything in the

24 divorce case, according to Ms. Albrecht, that would include

25 Ms. Sternenberg.



1          THE COURT:  Attorney Fontaine, do you want to

2     respond to Mr. Albrecht's statement?

3          MR. FONTAINE:  Yes, sure.  Just very briefly.  My

4     understanding is that Attorney Sternenberg has had no

5     involvement since the issuance of this original domestic

6     violence order, has not had any further involvement in this

7     case since prior to that.  And therefore, I don't know that

8     she would be able to provide any relevant information on the

9     issues before the Court, which is relative to whether the

10    Court grants our request for an extension of the domestic

11    violence protective order.

12         THE COURT:  What about the -- no.  Hold on, Mr.

13    Albrecht.

14         Attorney Fontaine, what about the claim that your

15    client intends to offer evidence tomorrow regarding Ms.

16    Sternenberg's investigation, findings she made.  What's your

17    response to that?

18         MR. FONTAINE:  My client will not be presenting any

19    evidence or argument relative to Attorney Sternenberg.  I

20    don't know exactly where that's coming from.  I don't have

21    that pleading in front of me, but that is not part of any

22    presentation that that will occur tomorrow.

23         THE COURT:  Okay.  Mr. Albrecht?

24         MR. ALBRECHT:  Again, I'm not actually

25    (indiscernible) to the presentation that will occur tomorrow



1    then because it just says evidence and testimony in the

2    divorce case.  And given that Your Honor has already extended

3    the hearing to a year, I would view any further presentation

4    by Ms. Albrecht as amendments that I have not been noticed on.

5              THE COURT:  All right.  So I'm granting the motion

6    to quash for Attorney Sternenberg, she has not been involved

7    in this case for years.  Mr. Albrecht --

8              MR. ALBRECHT:  I (indiscernible) disagree, Your

9    Honor.

10             THE COURT:  Mr. Albrecht -- Mr. Albrecht --

11             MR. ALBRECHT:  She precedes the mandate.

12             THE COURT:  Mr. Albrecht, hold on, please.  This is

13   not -- this is your opportunity to listen, and then you can

14   speak, okay, sir?

15             MR. ALBRECHT:  All right.

16             THE COURT:  So I agree that Attorney Sternenberg

17   does not have any information to determine the, that which is

18   what I'm required to find, any reliable evidence as to the

19   current conditions of such that the Plaintiff's safety and

20   well-being may be a concern.  So I'm granting the motion to

21   quash, however, any attempt to bring in evidence regarding the

22   divorce or the GALs investigation will be stricken and will

23   not be allowed in, with the exception that the Court can

24   consider, under Supreme Court precedent, the findings by Judge

25   Derby that were issued in the initial order.  And so to that

1  extent, both parties may comment on that.

2          So now I'll let you be heard, Mr. -- hold on.  I'm

3  going to let you be heard, Mr. Albrecht.

4          MR. ALBRECHT:  Okay.

5          THE COURT:  I'm going to let you be heard on my

6  ruling.

7          MR. ALBRECHT:  So Your Honor, in the first instance,

8  Ms. Sternenberg is involved in this case as recently as

9  September 1st, 2023, when she was served with a mandate from

10  the Supreme Court.  In the second instance, the conditions

11  involve whether they are the same now as they were then back

12  in the past.  And while Ms. Sternenberg may not be able to

13  testify to what they are now, she can certainly testify to

14  what they were then.

15          THE COURT:  So as I indicated, Mr. Albrecht, reading

16  from the Supreme Court's July 14th, 2023, order, where it

17  says,  "to determine good cause, the trial courts must assess

18  whether the current conditions are such that there is still

19  concern for the safety and well-being of the Plaintiff."  So

20  that's the standard that I'll be operating under in

21  determining whether we're going to extend this order.

22          And so I'm going to take the I can consider by

23  Supreme Court precedent the factual findings made in the

24  initial case as well as the extension, because those are

25  findings in our final as the Supreme Court has stated in the

1    same decision from July 14, 2023.  And so I'm going to grant

2    the motion to quash Attorney Sternenberg's subpoena.  All

3    right.

4              Yeah, go ahead, Mr. Albrecht.

5              MR. ALBRECHT:  Yes, Your Honor.  You've already

6    decided to extend the order, and I'd like to know what your

7    jurisdiction was to do that.

8              THE COURT:  Mr. Albrecht, I've made a ruling

9    regarding a motion to quash.  I have not decide -- I decided

10   the extension based on the pleadings and the objection that

11   was filed back in February.  What happens tomorrow has not

12   been determined yet.  So my jurisdiction is under 173(B) and

13   my jurisdiction is under the Supreme Court's recent orders,

14   both in October as well as today, which gave this trial court

15   the ability to schedule -- "the trial court's decision in any

16   other proceeding the trial court deems necessary to resolve

17   the issues before it."

18             So the Supreme Court has given this Court the

19   authority to make these decisions within 30 days of October

20   20th, 2023.  That is not a suggestion.  A Supreme Court order

21   is a mandate.  And this trial court, being a court of inferior

22   jurisdiction, is required to comply with the Supreme Court's

23   orders.  And that's what I'm doing.  So my ruling on Attorney

24   Sternenberg's remains the same.  All right.

25             Next issue is on the motion to quash Judge King's



1  subpoena.  So once again, Mr. Albrecht, I've reviewed both the

2  motion and the objection.  Do you want to add any additional

3  comment to your objection, sir?

4        MR. ALBRECHT:  So whether I'm receiving a fair trial

5  is always relevant.  Judge King's deposition is directly

6  relevant to whether I'm receiving a fair trial.  His

7  deposition discusses my case.  His deposition, one moment, or

8  the piece of it that I have, because he only has his excerpt.

9  One moment, Your Honor.

10       THE COURT:  Sure.  Take your time, sir.

11       MR. ALBRECHT:  Okay.  So at page 26, lines 12 to 16,

12  Judge King was asked, question, "Did you tell the Judicial

13  Conduct Committee?"  He replied, "Did I tell the judicial

14  Conduct Committee what?"  He answered about what we'd found

15  regarding the transcript in the Albrecht case.  And he replied

16  that, yes.  You know, he certainly has personal knowledge of

17  the case.  That's certainly clear from the deposition.

18       If you look at the exhibits and my requests for

19  findings that I submitted for this hearing, you will note --

20  hang on.  Let me find the exhibit list.  So Judge King's

21  testimony would be directly relevant to just about everything

22  in the exhibit list you received today.  It would be relevant

23  to the 11/12/2020 email exchange between eScribers and the New

24  Hampshire Judicial Branch.  Maybe not directly relevant to the

25  email eScribers wrote me, but his testimony on the November

1   13th, 2020, email that Judge King wrote to Master DalPra is

2   directly relevant.  It discusses -- the email is directly

3   about evidence in my case.

4          The fact that Judge King was aware that the Judicial

5   Conduct Committee dismissed Mr. DalPra's complaint on February

6   16th, 2021, is directly relevant to this case and whether I'm

7   receiving a fair hearing.  When you look at the December 1st,

8   2021st New Hampshire Supreme Court invoice, with the first

9   version of that, it's inaccurate because of Judge King.  When

10  you go to the December 10th, 2021, New Hampshire Supreme Court

11  order, that order discusses the transcripts being accurate.

12         When you go to 12/15/2021, the Supreme -- there's a

13  Supreme Court invoice to purchase a second transcript.  The

14  police report, Exhibit 8, discusses that there's a --

15  according to eScribers, New Hampshire Judicial Branch policy

16  that you leave that out and I think Judge King should testify

17  as to the accuracy of that.

18         You've got a whole investigation from a public

19  integrity unit as Exhibit 9 4/22/2022, they went down a rabbit

20  hole because they didn't have access to Judge King's email or

21  deposition.  I think Judge King should testify about why

22  that's the case.

23         You've got the deposition itself, which we only have

24  a partial or redacted copy of, (indiscernible) is about my

25  case, how can I have any semblance of due process if I don't



1    see the whole thing?

2         You've got, finally, after that, after the Supreme

3    Court has already issued prior orders in this appeal, they

4    found that Master DalPra committed judicial misconduct.  But

5    that was long after prior orders that even Judge Derby based

6    his first order on.  And that was the order of events here is

7    significant.  And it's not until December 20th, 2022, over two

8    years later, and that's Exhibit 12 that I give you today, that

9    we even have a complete 11/6/2020 transcript.

10         And Judge Curran based the first one year extension

11   off of what happened on 11/6/2020.  And if we don't have an

12   accurate version of that until 2022 then how could even Judge

13   King's first one year extension have merit?  He based it on

14   inaccurate information.  Two years later, we have accurate

15   information and Judge King should testify about that.

16         His email discusses specifically -- he wrote an

17   email on November 13th, 2020, seven days after the hearing

18   that's just come to light.  He writes, Bruce, I'm sorry to

19   have to be writing this email.  He discusses on November 6th,

20   2020, you had what I believe was a telephonic hearing in what

21   was obviously a very difficult matter, Albrecht and Albrecht.

22         So when I go to Judge King's motion to quash, you

23   look at some of the claims here.  The documents requested are

24   not relevant to any claims or defenses.  Well, the Supreme

25   Court said they were highly relevant in its December 10th,



1  2021 order.

2         In terms of time, we're seven and a half months out

3  from when RSA 173 says we're supposed to have a hearing.  And

4  in terms of in a reasonably short period of time, I did it as

5  quickly as I could.  I mean, I'm certainly not the reason

6  we're holding a hearing seven and a half months after you

7  already decided to grant Ms. Albrecht's one year extension and

8  it was supposed to be held within 30 days.

9         So I think her argument in paragraph 3 is not merit,

10  has no merit, 2 or 3, it has no merit.  Again, (indiscernible)

11  that they're not relevant, they're directly relevant.  They're

12  about this case.  The, I think, (indiscernible) paragraph 5,

13  that Judge King has no personal knowledge of any claim or

14  defense by either party in this matter is ludicrous when he's

15  writing emails about it that -- not only was he writing emails

16  about it, they're very substantive.  They're not even

17  administrative in nature.  They substantially have affected

18  the adjudication of this case.  Their court -- excuse me,

19  adjudicatory in nature under Article 8 of the State

20  Constitution.

21         I'll admit, at paragraph 6, supervising caseload

22  management, I'd like to ask Judge King why, if he supervises

23  caseload management, why we're having a hearing seven and a

24  half months later when the statute says 30 days.  It's his job

25  to supervise caseload management; he should speak to that.

1 And implementing established policies and orders.  I mean, I

2 think Judge King needs to testify about, again, why we're

3 having an October -- as far as hearing is seven and a half

4 months later.  Isn't he in charge of that?

5        The claim in paragraph 5, and the subject matter of

6 that deposition, does not relate to pending (indiscernible)

7 here.  It directly does.  There's a pending claim or defense

8 that I'm not receiving a fair trial under Part 1, Article 38,

9 and I'm not receiving a fair trial under the 14th Amendment.

10 The case law for that, I would cite, for the State would be

11 (indiscernible).  For federal would be State v.

12 (Indiscernible).

13        And again, I would remind the Court that the federal

14 due process requirements are an objective standard of whether

15 under a realistic appraisal of psychological tenets using

16 human weaknesses.  The issues of such a risk of -- a risk,

17 that this is a risk, of bias or prejudgment that the practice

18 must be forbidden if the guarantee of due process is to be

19 adequately implemented.  Judge King needs to testify as to

20 whether that's happening here.  It's not.  My position is it's

21 not and his testimony is critical to address that issue.

22 Again, I would ask that paragraph 9 essentially be stricken as

23 irrelevant.  And that's my commentary on his motion to quash.

24        THE COURT:  Thank you, Mr. Albrecht.

25        Attorney Fontaine, do you have anything you want to



1 say, sir?

2 MR. FONTAINE: The same position I took with regards

3 to the other one. That any potential testimony of Judge King

4 or -- is not relevant to the very limited issue that you are

5 deciding on remand tomorrow.

6 THE COURT: Okay.

7 Attorney Denny, do you have anything you want to add

8 to your motion to quash?

9 MS. DENNY: Only that I appreciate that you

10 explained the limited scope hearing tomorrow and that I think

11 it just further clarifies that Judge King's, or the

12 information that Mr. Albrecht is seeking, doesn't have any

13 relevance to the limited scope that's going to be raised

14 tomorrow.

15 MR. ALBRECHT: Is Attorney Denny, excuse me if I'm

16 out of order, aware of the Supreme Court order that came in

17 that is asking for a fully developed factual record? I think

18 this is critical to the Supreme Court's request for a fully

19 developed factual record.

20 THE COURT: I don't agree, Mr. Albrecht. Given what

21 the scope of tomorrow's hearing on, Judge King does not have

22 any evidence regarding the nature of whether there is a

23 current need for an extension or a restraining order. The

24 testimony you talk about were regarding of marital orders that

25 were vacated by the Supreme Court, or actually, by myself,

1    actually. The Supreme Court vacated the DV order, and so we

2    had a hearing in February of 2022. I issued an 11-page

3    decision after that order, then issued a multi-page motion to

4    reconsider. That has been affirmed by the Supreme Court. And

5    so Judge King has no offer to that.

6          With respect to the hearing being delayed, Mr.

7    Albrecht, I direct your attention to the October 20th, 2023,

8    order from our New Hampshire Supreme Court, and I'm quoting,

9    all the trial court -- "Although the trial court scheduled a

10    hearing as provided under the statute, the Defendant filed his

11    notice of appeal the day before the hearing. The trial court

12    understandably interpreted the Defendant's appeal to divest it

13    of continuing jurisdiction, prompting the Court to cancel the

14    hearing."

15          Judge King has nothing to offer regarding that, as

16    the Supreme Court has already weighed in on that issue. So

17    the motion to quash Judge King's subpoena is granted. He does

18    not need to appear tomorrow.

19          We'll next address the motion to quash Attorney

20    Creegan. Mr. Albrecht, what do you want to be heard on that,

21    other than your objection, sir, which I do have right in front

22    of me?

23      (Pause)

24          THE COURT: Mr. Albrecht?

25          MR. ALBRECHT: Yes.



1          THE COURT:  Do you have anything to offer?

2          MR. ALBRECHT:  Oh, you were waiting on me.

3          THE COURT:  Yes.

4          MR. ALBRECHT:  I'm sorry.  I didn't realize that.

5    So again, getting back to the key issues of whether

6    (indiscernible) the trial.  Your Honor received a motion to

7    take judicial notice of a Fifth Circuit Court of opinion and

8    lead relevant case law.  Rules for judicial notice are

9    "shall".  I construe "shall" as mandatory.  Can you let me

10   know if you've reviewed that case and the relevant law review

11   articles?

12         THE COURT:  I have not, sir.

13         MR. ALBRECHT:  So when did I file that?  So not only

14   did Ms. Albrecht not object --

15         THE COURT:  So no --

16         MR. ALBRECHT:  One moment.

17         THE COURT:  No.  Mr. Albrecht, I want you to address

18   the objection to the motion to quash from Attorney Creegan.

19         MR. ALBRECHT:  This is directly relevant because I

20   cite back to case law.  Yes.  So Index 222, 1024, 2023.  This

21   is directly relevant if Your Honor has not yet reviewed that.

22   And Attorney Fontaine didn't even object.  And it's been on

23   your desk how long now?  And that's directly relevant to

24   Attorney Creegan's motion to quash in my objection.  So I

25   don't believe Your Honor is prepared to address that today.



1          MR. FONTAINE:  Judge, this is Mike Fontaine.  I

2    would like a clarification from Mr. Albrecht as to what index

3    number he's referencing again?

4          THE COURT:  222.

5          MR. ALBRECHT:  One moment.  I have it up here.

6    Index number 222.

7          THE COURT:  So I disagree with your --

8          MR. FONTAINE:  Thank you.

9          THE COURT:  -- I disagree with your opinion, Mr.

10   Albrecht.  Please proceed.

11         MR. ALBRECHT:  One moment, Your Honor.

12         THE COURT:  Yes.  You may take a moment, sir.

13         MR. ALBRECHT:  So omitting some internal citations,

14   the Fifth Circuit has recently observed many divorce lawyers

15   routinely recommend to pursue the civil protector or

16   protection orders for clients in divorce proceedings as a

17   tactical leverage device.  Civil protective orders are

18   deployed is, quote, "an affirmative element of divorce

19   strategy.  That's because civil protective orders can help a

20   party in a divorce proceeding to secure favorable ruling on

21   critical issues such as marital and child support, exclusion

22   from marital residence, and property disposition.  Protective

23   orders can also be a powerful strategic tool in custody

24   disputes.  This makes civil protective orders a tempting

25   target for abuse.



1        "Judges have expressed concern with the serious

2   policy implications of permitting allegations of domestic

3   violence to be used in divorce proceedings, citing no --

4   citing another case, noting the growing trend to use

5   protection orders as tactical weapons in divorce cases and for

6   good reasons.  Not all parties to a divorce are about using

7   protective orders, not for their intended purpose, but solely

8   to gain advantage in a dissolution.

9        "Anyone who is willing to commit perjury and spend

10  months or even years planning to file a domestic violence

11  complaint in an opportune moment in order to gain the upper

12  hand in the divorce proceedings.  So a plaintiff willing to

13  exaggerate past incidents or even commit perjury and have

14  access to a responsive support group, a sympathetic court, and

15  eliminating immediate relief."  Your Honor, can you --

16       "Moreover, these concerns are exacerbated by the

17  fact that judges are too often ill-equipped to prevent abuse.

18  Family Court judges may face enormous pressure to grant civil

19  protective orders and no incentive to deny them.  For example,

20  family court judges may receive mandatory training, which they

21  warrant about the unfavorable (indiscernible) results, if they

22  deny requests for civil protective orders."

23       As one judge has noted in newspaper headlines be

24  death to a municipal court judge's career.  So the prospect of

25  an unfavorable newspaper headline is a frightening one.  To



1  quote another judge, "Your job is not to become concerned

2  about all the Constitutional rights of the defendant they're

3  violating if you grant a restraining order.  Throw them out in

4  the street, give him the clothes on his back, and tell him

5  deal with it."  Yet another judge said, "If there is any doubt

6  in your mind about what to do, you should issue the

7  restraining order."

8          So what's key here, Your Honor, is you already

9  decided to issue the restraining order.  You already did.  And

10 I'm not sure what the burden is to undo that.  I'd be

11 (indiscernible) to say that if there's -- if you have any

12 doubt, you have to issue it.  It's a complete reversal of

13 innocent proven guilty.  That's not a fair trial in a civil

14 proceeding.

15         What's other key here is training.  What's been

16 subpoenaed from the officer of the courts.  And it would be,

17 again, my position these are also government records under

18 Part 1, Article 8, as they directly relate to adjudication of

19 cases is I need to see if you even have any confidence in the

20 future here at all that I'm receiving anything close to a fair

21 trial given you've already pre-decided to extend the order.

22 And if you could explain what good -- what does good cause

23 mean, Your Honor?  What's standard for good cause?

24         THE COURT:  So Mr. Albrecht, I direct your attention

25 once again to the Supreme Court of New Hampshire, which issued

1 an order affirming my extension that I issued on February

2 25th, 2023 -- 2, sorry '22. The first page of that, sir, the

3 Supreme Court did a whole paragraph as to what standard the

4 court is bound by so. And they issued that and then they said

5 that decision mandate back in August 16th.

6 Mr. Albrecht, you should also note, sir, that the

7 rule of evidence that you cite, you only cited a portion of

8 it, sir. So I want to direct your attention to the entire

9 rule. So when it comes to judicial notice of law, sir, it

10 says the court may take judicial notice of law, including

11 decisional, Constitutional, and public statutory law. It only

12 says when mandatory shall the court take judicial notice. But

13 you haven't indicated, sir, that it's mandatory for me to take

14 judicial notice of the case from the Fifth Circuit, which is

15 not binding precedent on the New Hampshire state court.

16 And our First Circuit decision, unless it's on

17 federal Constitutional matters, what may be binding on a state

18 court as well, so you're directed to the Supreme Court's

19 decision on July 14th, 2023, as your guidance that you need as

20 to what good cause means. Okay, Mr. Albrecht?

21 MR. ALBRECHT: Could you repeat the last sentence?

22 THE COURT: So you're directed to look at, sir, July

23 14th, 2023, Supreme Court decision in your -- in this case --

24 MR. ALBRECHT: Okay. One moment. Let me find that,

25 Your Honor.



1           THE COURT:  Sure.

2           MR. ALBRECHT:  What docket is that?  Appellant

3    docket?

4           THE COURT:  I don't know, Mr. Albrecht.  It's the

5    July -- it's a July 20th -- July 14th, 2023, order.  It's

6    222 -- 20220284.  So --

7           MR. ALBRECHT:  Okay.

8           THE COURT:  I'm going to -- I'm going to hear --

9    hold on.  First, I'm going to hear -- while you read that,

10   sir, I'm going to hear from Attorney Fontaine, then Attorney

11   Denny.

12          Attorney Fontaine?

13          MR. FONTAINE:  Thank you.  Once again, Judge, same

14   position.  The testimony of Ms. Creegan has no relevance to

15   the very limited issue that you are deciding tomorrow in the

16   hearing scheduled for tomorrow.  And therefore, I don't

17   believe that her testimony should be required.

18          THE COURT:  Attorney Denny?

19          MS. DENNY:  Yes.  Just that Mr. Albrecht hasn't

20   provided any more justification for why those materials are

21   relevant to the hearing tomorrow.  And the (indiscernible)

22   case really doesn't support what he is hoping that it will.

23   It doesn't -- it's completely irrelevant to the situation.

24          THE COURT:  Mr. Albrecht, do you have anything else

25   to add on the motion to quash the subpoena for Attorney



1  Creegan?

2          MR. ALBRECHT:  Your Honor, whether I'm receiving a

3  fair trial under Article 35, whether I'm receiving equal

4  protection under Article 10 and the State Constitution, and

5  whether I receiving equal protection and due process under the

6  14th Amendment of the U.S. Constitution is always relevant.

7          THE COURT:  Anything else, Mr. Albrecht?

8          MR. ALBRECHT:  I would like to make an oral motion

9  for instruction from you what constitutes good cause because I

10 don't know what that means when you've already decided against

11 me.

12          THE COURT:  Mr. Albrecht, good --

13          MR. ALBRECHT:  So I'd like to know what is properly

14 before the Court tomorrow?

15          THE COURT:  So what's proper before the Court is --

16          MR. ALBRECHT:  And when you say narrow, what

17 pleadings?

18          THE COURT:  So Mr. Albrecht, good cause is defined

19 in the Supreme Court order that I told you about, sir.  So you

20 can read that to determine what good cause is.  Consistent

21 with the --

22          MR. ALBRECHT:  Can you direct me to the case --

23          THE COURT:  -- hold on Mr. Albrecht.

24          MR. ALBRECHT:  -- correct case where it says, "good

25 cause"?



1          THE COURT:  I'll read it to you.  "To determine

2   whether good cause exists, the trial court must assess whether

3   the current conditions are such that there is still concern

4   for the safety and well-being of the plaintiff."  They cite

5   MacPherson v. Weiner.  "In its assessment, the trial court

6   must review the circumstances giving rise to the original

7   protective order and any violation of the order.  The trial

8   court should also take into --"

9          MR. ALBRECHT:  Well, the circumstances of the -- I'm

10  sorry, Your Honor.

11         THE COURT:  You cut me off, Mr. Albrecht.

12         MR. ALBRECHT:  But the circumstances --

13         THE COURT:  Hold on, Mr. Albrecht.

14         MR. ALBRECHT:  -- gave rise.

15         THE COURT:  Hold on, Mr. -- Mr. Albrecht, I gave you

16  the courtesy of speaking without cutting me off.  Please do

17  the same thing, sir.  Okay?  Thank you.  "The trial court

18  should also take into account any present and reasonable fear

19  by the plaintiff, whether the trial court determines that the

20  circumstances are such that without a protective order, the

21  plaintiffs safety and well-being would be in jeopardy, good

22  cause warrants an extension."  That's from a decision in this

23  case affirming the extension that I issued in February of

24  2022.  That's the standard we're going by for tomorrow, Mr.

25  Albrecht.

1          MR. ALBRECHT:  So what's the standard for her having

2     any cause to fear for her physical safety?

3          THE COURT:  Okay.

4          MR. ALBRECHT:  What are the objective standards for

5     that?

6          THE COURT:  Okay.  Well, sir, you can read the

7     language what the Supreme Court wrote.  You want any further

8     guidance; you can hire a lawyer.  I probably won't find one by

9     tomorrow, sir, but I'm not going to explain what each word

10    means to you, sir.  That's not my responsibility.  My

11    responsibility is to follow the law directed by the Supreme

12    Court.  And I will take into consideration any present and

13    reasonable fear by the Plaintiff.  That's an objective person

14    standard.

15         MR. ALBRECHT:  Okay.

16         THE COURT:  All right.  So I'm going to grant the

17    motion to quash Attorney Creegan's subpoena.  She doesn't need

18    to appear tomorrow.  The last one is Attorney Waystack's

19    motion to quash.

20         Attorney Waystack, you were patient, sir.  So do you

21    want to offer anything on your motion?

22         MR. WAYSTACK:  Sure.  Just a couple things, Judge.

23    I have read Mr. Albrecht's response.  I just want to call two

24    things to your attention.  In paragraph 4, Mr. Albrecht has

25    stated that I have personal knowledge about the facts of his



case, and he includes a give-and-take a bit, question and
answer, on the Judge Introcaso, former Judge Introcaso case.
In that case, Your Honor, I was retained by the Judicial
Conduct Committee to prosecute, and Mr. Albrecht's case was
one of seven cases wherein Judge Introcaso appointed Kathleen
Sternenberg as a guardian. The issue there was that Kathleen
Sternenberg was on Judge Introcaso's recusal list.

I learned nothing about the facts of Mr. Albrecht's
case. I've never met Mr. Albrecht. I've never spoken with
Mr. Albrecht, nor Ms. Albrecht, for that matter. And so the
reference in paragraph 4 of Mr. Albrecht's response really
does not shed any light on the issue.

More importantly, in the response in paragraph 5 of
Mr. Albrecht's response, he says I have personal knowledge of
his case through Judge King's deposition, and he mentioned it
earlier, page 26, lines 12 through 16. He lays it out in the
paragraph. Those are not my questions and answers. Those are
the questions posed by the attorney for former Master Bruce
DalPra. And so he's attributing something to me that I didn't
say.

But the simple fact of the matter is I also
prosecuted the former Master DalPra. Again, I didn't get into
any of the facts in Mr. Albrecht's case. More importantly, my
understanding, based on the caption of this case, Judge, is
that it's a continuation of a domestic violence order. I know

1 absolutely zilch about that. And so the final thing I'll say

2 is, so I would as much as I'd like to go down and hear you

3 handle this case, Judge, I really -- I don't think I should

4 appear tomorrow.

5 And moreover, and importantly, this subpoena to me

6 was a subpoena duces tecum. And I have no intention, unless

7 you order otherwise, of turning over the deposition of Judge

8 King at the DalPra judicial conduct hearing matter or

9 deposition. That -- there was about two or three sentences of

10 that that were going to be used at the judicial conduct

11 hearing in Judge DalPra. The rest of the deposition, it was

12 totally redacted, that deposition is not in the public domain

13 at all. And I see absolutely no reason that I should be even

14 be required to appear or to produce the King deposition, which

15 was on wholly unrelated matters in order for Mr. Albrecht to

16 use it at his domestic violence hearing tomorrow.

17 THE COURT: Okay. Mr. Albrecht?

18 MR. ALBRECHT: So if I can tease apart a couple of

19 different things that Mr. Waystack said. First, a correction,

20 and I don't think he'll disagree with me. I think it was

21 actually either nine or eight, nine or ten cases, depending on

22 how you count. So just to kind of run through those to be

23 specific. The first is Merrifield v. Cox, 657-2011-DM-00565

24 and Sobell v. Sobell, 659-2013-DM-00848, Crawford v Crawford,

25 226-2008-DM-00525, Covart v. Covart, 659-2015-DM-00463. Then

1    <u>Albrecht v. Albrecht</u>, 659-2016-DM-00288.  <u>Yaitras v. Yaitras</u>,

2    659-2016-DM-00332, <u>Campbell v. Partello</u>, 659-2018-DM-00702.

3    Then the next one or two related cases <u>Loudermilk v.</u>

4    <u>Montgomery</u>.  <u>Morell v. Montgomery</u>, it's the same.  <u>Montgomery</u>,

5    659-2015-DM-00185, 659-2019-DM-00383.  And last, but not

6    least, <u>Ausiaikova v. Meckel</u>, 659-2019-DM-00414.  Appeal on

7    that is 2020-0160.

8         I do have some concerns there, particularly February

9    19th you've got trial orders where Hamblett & Kerrigan is

10   fully aware of the conflict and Julie Introcaso is approving

11   the fee increases.  And (indiscernible) v. Master DalPra and

12   yourself are all aware this is going on even -- and I believe

13   you also served as counsel for, or happened to encounter it

14   also, in <u>Loudermilk</u> in Montgomery.

15        So I also have to question, now that she's no longer

16   paying you, why she's getting the pro se treatment in the

17   recent hearings where she's appeared before you.  And I would

18   ask you to take judicial notice of hearings.  And this is

19   about equal rights and equal protection and equal access for

20   pro se litigants.  And I just want to make sure that we're

21   both getting treated the same, given that I was never your

22   client before appearing before you and she was your client

23   before, and now she's appearing before you.  And I just want

24   to make sure we're getting the same treatment.  If you give me

25   a moment, I can get the dates of those hearings.



1      THE COURT:  That's not relevant, Mr. -- Mr.

2  Albrecht, that's not relevant to this case, sir.  Do you have

3  anything you want to add regarding Attorney Waystack?

4      MR. ALBRECHT:  I would respect -- well, he said

5  there were seven, and I said there were nine or ten based on

6  how we're counting.  I'm hoping that there'll be something we

7  can reach an agreement on, but on that.  And then, I think the

8  crux of the matter here though, as I put in his -- in my

9  objection.  I certainly don't require his physical appearance.

10  I'd be more than happy to have him appear remotely.  But I

11  think the crux of the matter is the subpoena duces tecum.

12  He's got the complete, unredacted deposition.  The deposition

13  is about my case.  It's specifically about my case.  It's

14  specifically about how Judge King handled my case.  If you're

15  denying me access to how Judge King handled my case, that

16  strikes to the heart of the matter of whether I'm receiving a

17  fair trial under either Article 35 of the State Constitution

18  or Article 14 of the U.S. Constitution.  And again, strikes to

19  the heart to the respective standards for those in Tapply v.

20  Zukatis and Caperton v. AT Massey Coal, and whether I'm

21  getting a fair trial, sir, is always relevant.

22      THE COURT:  Anything else, Mr. Albrecht?

23      MR. ALBRECHT:  I'd just like to hear if Mr. -- on

24  the narrow issue of whether there's seven or nine if Mr.

25  Waystack will go with my view on that because I completely



1    don't -- disagree.  And if Mr. Waystack also, sort of, with --

2    we just agree to disagree that the crux of the matter of the

3    subpoena is the duces tecum second part, because if he were to

4    email me a PDF, then -- I think he's familiar with this, he

5    may not have done the questioning, but he certainly -- he was

6    there when it was taken for the whole thing.  Would that be

7    correct, Mr. Waystack?

8           MR. WAYSTACK:  I'm not going to respond directly to

9    your questions, Mr. Albrecht, unless the Judge orders me to do

10    so.

11           THE COURT:  No.

12           MR. WAYSTACK:  This is a hearing before the Court.

13    This is not a interrogatory between you and me.

14           THE COURT:  I agree with Attorney Waystack, so no,

15    Mr. Albrecht.  This is your turn to listen, sir.  You've been

16    given extensive amount of time to lay forth your position.

17    I'm granting the motion to quash the subpoena duces tecum.

18    Attorney Waystack does not need to appear tomorrow or provide

19    any documents.  The limited scope of tomorrow's hearing is

20    whether there's current -- whether there's good cause to

21    extend the restraining order.  Mr. Waystack, based on your

22    proffer, has no reliable evidence that's going to go to that.

23    And so the motion to quash is granted.  Thank you, Mr.

24    Waystack -- Attorney Waystack.

25           MR. WAYSTACK:  Thank you, Your Honor.



1          THE COURT:  All right.  Attorney Fontaine, you had

2   the issue with one of your employees, sir?

3          MR. FONTAINE:  Yes.

4          THE COURT:  You want to be heard on that?

5          MR. FONTAINE:  Judge, just -- yes, please.  If I

6   could be heard briefly.  We filed an ex parte motion to quash

7   prior to the originally scheduled hearing.  That was to be

8   addressed at the hearing, or as I recall, the order.  The

9   Supreme Court's order that was issued remanding this matter to

10  you occurred, I think, at this point over 20 days ago.  Mr.

11  Albrecht has never filed an objection to that motion.  I think

12  the reasons outlined in my motion support your quashing the

13  subpoena of my employee Wendy Borrun as specifically there's

14  been no objection filed by --

15         THE COURT:  Okay.  All right.

16         MR. ALBRECHT:  I disagree, Your Honor.

17         THE COURT:  Yes.

18         MR. ALBRECHT:  I can find the docket if you want.

19         THE COURT:  Yes.  Go ahead, sir.

20         MR. ALBRECHT:  I filed an objection Index 186, and

21  you ordered that the case should be scheduled for a prompt

22  hearing with Petitioner and Respondent present on the hearing

23  on the ex-parte motion and any orders issued.  It's scheduled

24  for March 30th, 2023, at 11:30.  You have the motion and the

25  objections.



1      MR. FONTAINE:  I've never seen that objection.

2      MR. ALBRECHT:  Seven and a half months later on an

3  ex parte.

4      THE COURT:  Okay.  Sir, do you want to be heard on

5  the motion to quash Attorney, sorry, Ms. Wendy Borrun's

6  subpoena.  Mr. Albrecht?

7      MR. ALBRECHT:  Is Attorney Fontaine willing to have

8  Ms. Borrun appear as a witness?

9      MR. FONTAINE:  No.  I stated my objection.  I have

10  stated in my motion to quash my reasoning for not having her

11  appear.

12      MR. ALBRECHT:  Well, if you give me just a moment,

13  let me find my objection.  That will be just this one minute.

14     (Pause)

15      THE COURT:  Mr. Albrecht, you have thirty seconds,

16  sir.

17      MR. ALBRECHT:  Yes, I -- just a moment.  It's

18  almost -- wrong year.  I don't have it.  I would need to spend

19  a little time.  But it concerns that the -- in Ms. Albrecht's

20  original entire petition, docket number 1 was essentially

21  filled out by Wendy Borrun.  It's in her handwriting.  It's

22  not even in Ms. Albrecht's handwriting.  And the protocols are

23  that Ms. Albrecht is supposed to be present in court to do

24  that.  And she wasn't.

25      And so starting at docket one, I would issue an



offer of proof if Ms. Borrun would testify that that was her

handwriting on the petition. And if she wants to dispute

that, so great. But my offer of proof is Ms. Borrun would

testify that she filled out that -- the entire petition was

filled out in her handwriting for Ms. Albrecht and if it was,

Ms. Albrecht wasn't -- Ms. Albrecht didn't even --

THE COURT: Attorney --

MR. ALBRECHT: -- I don't think that's what the form

says you're supposed to do.

THE COURT: So you're saying that -- you're saying

that the initial petition in 2019 was in Ms. Borrun's

handwriting?

MR. ALBRECHT: Correct.

THE COURT: Okay.

Attorney Fontaine?

MR. FONTAINE: Sure. Judge, that's no different

than someone typing something at someone's office. That's a

form document. That's not a document that can be put into

word processing. And so the document itself was completed by

a paralegal. That document was signed under oath by Ms.

Albrecht, who is on this call and could attest to the fact

that that -- those statements contained in there were

statements that she was making and that simply were written

down onto a form document by Ms. Borrun that, again, she could

easily testify to that right now.



1          THE COURT:  Yeah, no need to that, because I'm going

2   to direct both parties attention to the July 14th, 2023,

3   decision from the New Hampshire Supreme Court when it said the

4   December 2019 order is final, which is underlined.  That's

5   emphasis included.  And that similarly underlined "our order

6   upholding the initial protective order is also final", which

7   is underlined, so based on that, I'm granting your motion to

8   quash Ms. Borrun's subpoena.  She doesn't need to appear

9   tomorrow.

10          The next one we're going to address is Ms.

11   Introcaso.  Mr. Albrecht, can you give me a proffer as to what

12   you intend Ms. Introcaso's testimony to be tomorrow?

13          MR. ALBRECHT:  I -- she hasn't received service, so

14   I don't anticipate she would show.

15          THE COURT:  Okay.  All right.  So no need to address

16   that.

17          MR. ALBRECHT:  I can give you -- I can give you a

18   proffer from her deposition --

19          THE COURT:  No.

20          MR. ALBRECHT:  -- that she was aware of the

21   conflicts of Bruce -- between Ms. Sternenberg and Bruce DalPra

22   since 2014 and failed to disclose it.

23          THE COURT:  Okay.  So --

24          MR. ALBRECHT:  And Master DalPra failed to disclose

25   it in 2014 also.



1          THE COURT:  Okay.

2          MR. ALBRECHT:  It's right in her deposition.

3          THE COURT:  Well, if she is served, I'm going to

4   quash her subpoena, because once again, as my rulings

5   throughout this hearing has noted, the standard tomorrow is

6   limited to whether there's currently good cause.  So that's to

7   be quashed.  Attorney Piela, what's proffer as to his

8   testimony tomorrow?

9          MR. ALBRECHT:  His testimony would be your role in

10  the task, Your Honor's role in the "cash for kids" scheme and

11  knowledge of Ms. Introcaso's, sort of, improper fee increases

12  on Kathleen Sternenberg's orders that Your Honor was fully

13  aware of that tax attorney Rauseo while the two of you were

14  working as Hamblett & Kerrigan.  And that Hamblett & Kerrigan

15  profited while representing Laura Montgomery was paying you

16  back then to appear with Ms. Introcaso, excuse me, with

17  Kathleen Sternenberg in front of Ms. Introcaso.  And these

18  days, now that she's kind of been no strife on that, she's

19  just appearing in front of you pro se in her current case.

20         THE COURT:  Attorney Fontaine, do you have any

21  comment?

22         MR. FONTAINE:  No.

23         THE COURT:  Okay.  So I'm striking Attorney Piela's

24  subpoena as well.  That is not relevant to the issue that

25  we're appearing to tomorrow.  What we're dealing with tomorrow



1    is whether there's good cause in this case for the restraining

2    order to be extended.  Next one is Ms. --

3            MR. ALBRECHT:  You have already decided there's good

4    cause, and I need to know why, Your Honor.

5            THE COURT:  So Mr. Albrecht --

6            MR. ALBRECHT:  Back in February, you decided there

7    was good cause.

8            THE COURT:  And it was based on the pleadings, sir.

9            MR. ALBRECHT:  Then why are we having a hearing

10   tomorrow?

11           THE COURT:  Well --

12           MR. ALBRECHT:  If you've already decided the issue?

13           THE COURT:  I decided the issue back in February as

14   consistent with the protocols, Mr. Albrecht.  That's

15   consistent.  That's what all judges do.  I scheduled for a

16   hearing.  You filed an appeal.  The Supreme Court indicated in

17   its April 2022 order, the court understands why the hearing

18   was continued, so Supreme Court ordered it to be done within

19   30 days, a mandate that I am going to follow, and we'll

20   proceed tomorrow.

21           So there are two more witnesses listed.  Could you

22   give me a proffer regarding the testimony of Ms. Vivian

23   Girard, please?

24           MR. ALBRECHT:  Ms. Vivian Girard would testify that

25   I have scrupulously obeyed this order, that it's been in



1    effect since 2019. And even though Ms. Albrecht is a -- well,

2    Ms. Albrecht bought her home in Michigan in October '15 and

3    according to prior testimony went out sometime in October and

4    didn't return. Then at the telephonic hearing, she testified

5    she lives in California. But whether it's California or

6    Michigan, the order is that a prior case law, this is

7    apparently the least restrictive means possible to protect Ms.

8    Albrecht is for me to stay 2000 feet away from Collinsville

9    Bible Church in Massachusetts. So I guess that's super scary

10   to her.

11           But I'm allowed within 1000 feet of her person and

12   apparently, I failed to appear in a Michigan court. You will

13   sua sponte accuse me of violating the order, but Ms. Girard

14   would certainly testify that I have scrupulously obeyed it

15   with the regard of the church by not even being able to attend

16   a funeral for a close relative of hers that was within the

17   2000 feet buffer zone in Massachusetts, that this -- the New

18   Hampshire Judicial Branch is sort of declared as the least

19   restrictive means possible to protect Ms. Albrecht.

20           THE COURT: Attorney Fontaine?

21           MR. FONTAINE: Judge, I guess with regards to his

22   proffer there, obviously Ms. Girard could not possibly testify

23   that Mr. Albrecht was in compliance with this order at all

24   times. And in fact, there'll be specific evidence presented

25   tomorrow as to the basis for my client's continued concern for

1  her safety. And --

2  MR. ALBRECHT: I haven't been noticed of that, So I

3  would ask for a continuance.

4  THE COURT: I haven't --

5  MR. ALBRECHT: He hasn't provided it to me within

6  ten days of the hearing. I object. I would like it stricken.

7  THE COURT: Okay. Mr. Albrecht, this is a response

8  to the proffer. It's not being considered for tomorrow's

9  hearing. You can address the issue of any evidence tomorrow.

10  Okay, sir?

11  So with respect to the proffer made by Mr. Abrecht,

12  Attorney Fontaine, do you have anything else?

13  MR. FONTAINE: No, Judge. I'll leave the issue up

14  to you to decide.

15  THE COURT: Okay. The issue of Ms. Girard's

16  testimony is, once again, addressed in the Supreme Court

17  order. The trial court, Rauseo J. erred by preventing -- oh,

18  sorry, that's (indiscernible) -- that the trial court, Rauseo

19  J. erred by preventing the defendant from calling a particular

20  witness to testify as to the defendant's compliance with the

21  protective order on a particular occasion. We disagree. I

22  don't -- Ms. Girard does not have, based on the proffer,

23  sufficient evidence for the Court to consider, and in light of

24  the Court's prior ruling back in February of 2022. So she

25  will be excluded from providing any offers of proof in that

1  regard.

2  The last one is Mr. David Smith.  Mr. Albrecht, can

3  you make a proffer regarding Mr. David Smith's testimony?

4  MR. ALBRECHT:  Ms. Albrecht has previously testified

5  under oath that she has never filed a false police report.

6  Mr. David Smith would be there to admit numerous pieces of

7  evidence that she had filed any number of false police

8  reports, and the purpose is to impeach Ms. Albrecht's prior

9  testimony.

10  THE COURT:  Mr. Fontaine?  Attorney Fontaine?

11  MR. FONTAINE:  This is not at all relevant to the

12  limited issue before the Court tomorrow.  And therefore --

13  MR. ALBRECHT:  (Indiscernible)  Yeah.

14  THE COURT:  Yeah.  Mr. Albrecht, is this the same

15  gentleman that testified back in 2022?

16  MR. ALBRECHT:  Yes.

17  THE COURT:  Okay.  So I already heard his testimony

18  and made findings.  And like, once again, I'm referring back

19  to this, the July 14th, 2023 court order regarding res

20  judicata.  So the issue of the first extension, including Mr.

21  Smith's testimony, was considered by the Court.  The Court

22  issued an 11-page decision and a multi-page order on a

23  reconsideration, and that was affirmed.  So Mr. Smith's not

24  going to be allowed to express the same evidence that's

25  already been considered by the Court (indiscernible).



1    MR. ALBRECHT:  He can testify to different police

2  reports or other testimony that he didn't previously provide.

3    THE COURT:  Yeah.  So Mr. Albrecht, unless there's

4  been a conviction --

5    MR. ALBRECHT:  Same with Ms. Girard.  Ms. Girard has

6  never provided testimony.

7    THE COURT:  So Mr. Albrecht, this is not a hearing

8  within a hearing.  You want the Court to find that she filed a

9  false police report without a conviction that she filed a

10  false police report.  This is a limited scope hearing.  And

11  when -- you're not going to have the time to develop or for

12  the Court to actually make a decision as to whether someone

13  committed a crime by filing a false police report, that's the

14  wrong forum.  If there was a conviction for filing a false

15  police report, well, that would go to credibility.  But you

16  don't get the opportunity to try to prove it yourself.  That's

17  not an issue of credibility.  So Mr. Smith won't be allowed to

18  offer any testimony as well.

19    So we'll adjourn for today.  We'll start at 8:30,

20  sorry, 10:30 sharp, tomorrow for the hearing.  Thank you,

21  everybody.

22    MR. FONTAINE:  Thank you, Your Honor.

23    (Proceedings concluded at 3:53 p.m.)

24

25



<u>CERTIFICATE</u>

I, Kelly Borngen, a court-approved proofreader, do hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, to the best of my professional skills and abilities.

# Kelly Borngen

Digitally signed by Kelly Borngen
Date: 2024.03.19 11:46:08 -05'00'

KELLY BORNGEN, CDLT-290                    November 19, 2023
Transcriptionist/Proofreader

# ERRATA SHEET

**INSTRUCTIONS**: Please use the form below to detail requested changes, additions, or deletions. You must provide your name and contact email address and phone number when submitting this request.

Case name: Katherine Albrecht v. Dana Albrecht   Case number: 659-2019-DV-00341   Hearing Date: 11/15/2023

| VOLUME | PAGE | LINE | TRANSCRIPT SHOWS | CHANGE TO | AUDIT RESULTS (eScribers only use) |
|--------|------|------|------------------|-----------|-------------------------------------|
| | 2 | 5 | Katherine (indiscernible) | Katherine Minges | LB |
| | 2 | 17 | you (indiscernible). | you. Please forgive me. | LB |
| | 3 | 1 | you're talking | you're speaking | LB |
| | 4 | 17 | Mr. Albright | Mr. Albrecht | LB |
| | 6 | 1 | (Indiscernible) | Excuse me. | LB |
| | 6 | 3 | I (indiscernible) | I understand | LB |
| | 6 | 9 | seven and a half months later | seven-and-a-half months out later | LB |
| | 7 | 6 | Article 77 | Article 37 | LB |
| | 7 | 21 | (indiscernible) request | commentary, and request | LB |
| | 8 | 1 | to effect | to affect | Correct as is - affect is incorrect - LB |
| | 8 | 22 | motions of quash | motions of quash [sic] | motion to quash - LB |
| | 9 | 8 | Ms. Albrecht's fighting | Ms. Albrecht's spying | LB |
| | 9 | 18 | And (indiscernible) again, | And once again, | "once" is not said; remove (indiscernible) - LB |
| | 10 | 15 | presently (indiscernible) | presently so vague | LB |

I certify that I have been authorized to request a review of this transcript and understand that eScribers reserves the right to refuse to make any change that is not proven to be an error to the transcript by comparing the written transcript to the audio recording of the proceeding.

Name: Dana Albrecht   Email: dana.albrecht@hushmail.com   Phone: 603-809-1097   Date: _____

eScribers, LLC   *   7227 N. 16th Street, Ste 207   Phoenix - AZ - 85020   *   (800) 257-0885

# ERRATA SHEET

**INSTRUCTIONS**: Please use the form below to detail requested changes, additions, or deletions. You must provide your name and contact email address and phone number when submitting this request.

Case name: Katherine Albrecht v. Dana Albrecht    Case number: 659-2019-DV-00341    Hearing Date: 11/15/2023

| VOLUME | PAGE | LINE | TRANSCRIPT SHOWS | CHANGE TO | AUDIT RESULTS (eScribers only use) |
|---|---|---|---|---|---|
| | 10 | 21 | you accept | you're extending | to accept - LB |
| | 11 | 25 | (indiscernible) to the presentation | noticed to the presentation | noticed of the presentation - LB |
| | 12 | 8 | I (indiscernible) disagree | I respectfully disagree | LB |
| | 14 | 12 | 173(B) | 173-B | LB |
| | 15 | 13 | judicial | Judicial | LB |
| | 15 | 14 | answered about what we'd found | answered, "About what [he] had found | Quotations correct; "we'd" not "had" - LB |
| | 15 | 15 | regarding the transcript in the Albrecht case. | regarding the transcript in the Albrecht case." | LB |
| | 15 | 16 | that, yes. | to that, "yes." | LB |
| | 16 | 5 | Mr. DalPra's | Master DalPra's | LB |
| | 16 | 11 | being accurate | being inaccurate | LB |
| | 16 | 18-19 | public integrity unit | Public Integrity Unit | LB |
| | 16 | 24 | (indiscernible) is | How can? -- It's | How can -- it's - LB |
| | 18 | 4 | a reasonably | an unreasonably | SEE NOTE BELOW |
| | 18 | 10 | Again, (indiscernible) | Again, 4 | LB |

I certify that I have been authorized to request a review of this transcript and understand that eScribers reserves the right to refuse to make any change that is not proven to be an error to the transcript by comparing the written transcript to the audio recording of the proceeding.

Name: Dana Albrecht    Email: dana.albrecht@hushmail.com    Phone: 603-809-1097    Date: _____

eScribers, LLC    *    7227 N. 16th Street, Ste 207    Phoenix - AZ - 85020    *    (800) 257-0885

# ERRATA SHEET

**INSTRUCTIONS**: Please use the form below to detail requested changes, additions, or deletions. You must provide your name and contact email address and phone number when submitting this request.

Case name: Katherine Albrecht v. Dana Albrecht    Case number: 659-2019-DV-00341    Hearing Date: 11/15/2023

| VOLUME | PAGE | LINE | TRANSCRIPT SHOWS | CHANGE TO | AUDIT RESULTS (eScribers only use) |
|---|---|---|---|---|---|
| | 18 | 12 | (indiscernible) paragraph 5 | the claim in paragraph 5 | LB |
| | 18 | 18 | Their court | They're court | LB |
| | 19 | 6 | pending (indiscernible) | pending claims or defenses | LB |
| | 19 | 5 | paragraph 5 | paragraph 7 | LB |
| | 19 | 8 | Part 1, Article 38 | Part I, Article 38 [sic - Article 35] | LB |
| | 19 | 11 | (indiscernible). | Tapply v. Zukatis. | LB |
| | 19 | 11-12 | State v. (Indiscernible). | Caperton v. AT Massey Coal Co. | AT Massey v. Coal (sic) - LB |
| | 19 | 15 | psychological tenets using | psychological tendencies and | LB |
| | 19 | 16 | human weaknessses. The | human weaknesses, the | LB |
| | 22 | 6 | (indiscernible) the trial. | I'm receiving a fair trial. | LB |
| | 22 | 8 | lead | the | read - LB |
| | 22 | 20 | Index 222, 1024, 2023. | Index 222 [filed] 10/24/2023 | LB |
| | 23 | 14 | observed many | observed, "Many | LB |
| | 23 | 17 | civil protector or | civil | civil protector or -- - LB |

I certify that I have been authorized to request a review of this transcript and understand that eScribers reserves the right to refuse to make any change that is not proven to be an error to the transcript by comparing the written transcript to the audio recording of the proceeding.

Name: Dana Albrecht    Email: dana.albrecht@hushmail.com    Phone: 603-809-1097    Date: _____

eScribers, LLC    *    7227 N. 16th Street, Ste 207    Phoenix - AZ - 85020    *    (800) 257-0885

# ERRATA SHEET

**INSTRUCTIONS**: Please use the form below to detail requested changes, additions, or deletions. You must provide your name and contact email address and phone number when submitting this request.

Case name: Katherine Albrecht v. Dana Albrecht    Case number: 659-2019-DV-00341    Hearing Date: 11/15/2023

| VOLUME | PAGE | LINE | TRANSCRIPT SHOWS | CHANGE TO | AUDIT RESULTS (eScribers only use) |
|---|---|---|---|---|---|
| | 23 | 18 | deployed is | deployed as | Correct as is - LB |
| | 23 | 20 | favorable ruling | favorable rulings | LB |
| | 24 | 3 | no -- | note -- | Correct as is - LB |
| | 24 | 12 | the divorce proceedings | a divorce proceeding | Correct as is - LB |
| | 24 | 15 | eliminating immediate | a litany of immediate | LB |
| | 24 | 20 | which they | in which they're | LB |
| | 24 | 21 | warrant about | warned about | LB |
| | 24 | 21 | unfavorable (indiscernible) results | unfavorable publicity that could result | LB |
| | 24 | 23 | noted in newspaper | noted, "a newspaper | LB |
| | 24 | 23 | headlines be | headline can be | LB |
| | 25 | 2 | they're | you're | LB |
| | 25 | 5 | deal with it | "see ya' around" | LB |
| | 25 | 10 | I'd be | I'd read | I bring - LB |
| | 25 | 11 | (indiscernible) | Rahimi | LB |

I certify that I have been authorized to request a review of this transcript and understand that eScribers reserves the right to refuse to make any change that is not proven to be an error to the transcript by comparing the written transcript to the audio recording of the proceeding.

Name: Dana Albrecht    Email: dana.albrecht@hushmail.com    Phone: 603-809-1097    Date: _____

eScribers, LLC    *    7227 N. 16th Street, Ste 207    Phoenix - AZ - 85020    *    (800) 257-0885

# ERRATA SHEET

**INSTRUCTIONS**: Please use the form below to detail requested changes, additions, or deletions. You must provide your name and contact email address and phone number when submitting this request.

Case name: Katherine Albrecht v. Dana Albrecht    Case number: 659-2019-DV-00341    Hearing Date: 11/15/2023

| VOLUME | PAGE | LINE | TRANSCRIPT SHOWS | CHANGE TO | AUDIT RESULTS (eScribers only use) |
|---|---|---|---|---|---|
| | 25 | 13 | innocent proven | innocent until proven | innocent proven guilty (sic) - LB |
| | 25 | 15 | What's other key | What's also key | Correct as is - LB |
| | 25 | 16 | officer of | office of | LB |
| | 25 | 19 | cases is | cases. | cases, is - LB |
| | 25 | 19 | if you even have | to even have | Correct as is - LB |
| | 25 | 20 | future | judiciary | LB |
| | 27 | 21 | (indiscernible) | Rahimi | LB |
| | 28 | 4 | Article 10 and the State Constitution | Article 10 of the State Constitution | LB |
| | 28 | 5 | whether I | whether I'm | LB |
| | 33 | 2 | 659-2016-DM-00332 | 659-2016-DM-00322 | LB |
| | 33 | 11 | (indiscernible) v. Master DalPra | Mark Derby, Master DalPra | LB |
| | 33 | 14 | Loudermilk in Montgomery | Loudermilk v. Montgomery | Correct as is - LB |
| | 33 | 18 | judicial notice of hearings | judicial notice of those hearings | LB |
| | 34 | 18 | Article 14 | Article 14 [sic - Fourteenth Amendment] | LB |

I certify that I have been authorized to request a review of this transcript and understand that eScribers reserves the right to refuse to make any change that is not proven to be an error to the transcript by comparing the written transcript to the audio recording of the proceeding.

Name: Dana Albrecht    Email: dana.albrecht@hushmail.com    Phone: 603-809-1097    Date: _____

eScribers, LLC  *  7227 N. 16th Street, Ste 207   Phoenix - AZ - 85020  *  (800) 257-0885

# ERRATA SHEET

**INSTRUCTIONS**: Please use the form below to detail requested changes, additions, or deletions. You must provide your name and contact email address and phone number when submitting this request.

Case name: Katherine Albrecht v. Dana Albrecht    Case number: 659-2019-DV-00341    Hearing Date: 11/15/2023

| VOLUME | PAGE | LINE | TRANSCRIPT SHOWS | CHANGE TO | AUDIT RESULTS (eScribers only use) |
|---|---|---|---|---|---|
| | 36 | 18 | the docket | the docket number | LB |
| | 36 | 20 | objection Index 186 | objection. It's Index 186 | LB |
| | 40 | 10 | the task | the cash | LB |
| | 40 | 13 | that tax attorney | that, as attorney | LB |
| | 40 | 18 | been no strife | been milked dry | LB |
| | 42 | 2 | October '15 | on October 15th | LB |
| | 42 | 6 | that a prior case law | that per prior case law | Correct as is - LB |
| | 42 | 12 | I failed to appear | I am compelled to appear | LB |
| | 44 | 11 | Mr. Abrecht | Mr. Albrecht | LB |
| | 44 | 13 | (Indiscernible) Yeah. | Credibility is always relevant. | LB |
| | | | | | |
| | | | | | |
| NOTE | 18 | 4 | And in terms of in a reasonably short period of time, I did it as quickly as I could. | And in terms of -- in a reasonably short period of time. I did it as quickly as I could. | LB |
| | | | | | |

I certify that I have been authorized to request a review of this transcript and understand that eScribers reserves the right to refuse to make any change that is not proven to be an error to the transcript by comparing the written transcript to the audio recording of the proceeding.

Name: Dana Albrecht    Email: dana.albrecht@hushmail.com    Phone: 603-809-1097    Date: _____

eScribers, LLC    *    7227 N. 16th Street, Ste 207    Phoenix - AZ - 85020    *    (800) 257-0885